# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN KEITH WASHINGTON, | NO. CV 16-2362-KS |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

## INTRODUCTION

Plaintiff filed a Complaint on April 6, 2016, seeking review of the denial of his application for Title XVI supplemental security income benefits ("SSI"). On February 1, 2017, the parties filed a document entitled "Joint Submission" (also referred to as a "Joint Stip."), in which plaintiff seeks an order reversing the Commissioner's decision and awarding benefits. (*See* Joint Stip. at 20.) The Commissioner requests that the decision be affirmed or, in the alternative, that the case be remanded for further administrative proceedings. (Joint Stip. at 21.) By May 13, 2016, all parties had consented, pursuant to 28 U.S.C. § 636(c), to

1

proceed before the undersigned United States Magistrate Judge. (*See* Dkt. Nos. 10, 11, 12.) The Court has taken the matter under submission without oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

On May 9, 2012, plaintiff filed an application for SSI benefits, alleging a disability onset date of October 6, 2011. (*See* Administrative Record ("AR") 170-80.) Plaintiff was born on October 28, 1973, and was 38 years old at the time he filed his SSI application, and 40 years old when he had a hearing before an Administrative Law Judge ("ALJ").[1] (*See* AR 29, 40, 170.) Plaintiff had been incarcerated most of his adult life, most recently from May 2010 until he was paroled on April 27, 2012, and he had no past relevant work ("PRW"). (*See* AR 29, 41-42.)

The Commissioner denied the claim in an initial determination on July 26, 2012. (AR 93-96.) Plaintiff retained an attorney to represent him in August 2012 (*see* AR 99), but that attorney withdrew from representation in March 2013. (*See* AR 125.) On September 18, 2012, plaintiff requested reconsideration of the initial denial. (AR 100-01.) On May 3, 2013, the Commissioner denied reconsideration. (AR 102-07.) On June 27, 2013, Plaintiff requested a hearing before an ALJ. (AR 108-10.)

On May 6, 2014, ALJ Elizabeth R. Lishner conducted a hearing. (AR 34-67.) Plaintiff appeared at the hearing without a representative. (*See* AR 36.) Plaintiff acknowledged that he formerly had an attorney, but he said that "she wasn't doing her job" and was no longer representing him, and plaintiff said that he was "waiving [his] right to representation at this time." (*See* AR 36-39.) The ALJ's opinion noted that "[a]lthough

---

[1] An individual between 18 and 50 years of age is considered a "younger person' under agency regulations. *See* 20 C.F.R. § 404.563(c)-(e)

informed of the right to representation, the claimant chose to appear and testify without the assistance of any attorney or other representative." (AR 20.)

Plaintiff testified that he had graduated from high school. (AR 42.) He had last worked on October 6, 2011 (and that work was apparently in prison). (AR 41; *see also* AR 22, 24.) Plaintiff alleged that he was injured on October 6, 2011, moving a boulder while on a prison work crew, and he stated that he still had a Workers' Compensation claim pending from that injury at the time of the hearing on May 6, 2014. (AR 41.) Plaintiff testified that "with this . . . Worker's Comp [case], they, basically on my file [sic], I'm totally disabled, stationary . . . [a]nd with it being on my file, when they [sic] pull me up, who's going to hire me?" (AR 43.)

Plaintiff testified that he could not do jobs that he formerly did in prison, like landscaping and painting, but he said "I don't have a problem" with doing a job sitting down, although he said that "I have a problem sitting over 15 minutes" because "I get spasms in my back" which then require him to get up and walk around for 10 or 15 minutes. (*See* AR 41-44.) Plaintiff testified that, during the day when he is home, he does "[b]asically nothing," and he said that he can't play with his wife or four children "because of my issues." (AR 44.) Plaintiff testified that he can't put his shoes on and needs help putting them on, and he uses a cane "all the time." (AR 45.) Plaintiff testified that he has no income, and "the permanent disability that they [*i.e.,* Workers' Comp] were paying me stopped until they settle the case or until I . . . accept the offer." (AR 45.) The ALJ noted, and plaintiff confirmed, that his Workers' Comp benefits had ceased "in June of last year" (presumably 2013). (AR 65-66.) Plaintiff testified that he has an attorney representing him with his Workers' Comp claim, and Workers' Comp had offered him a settlement, but he had not accepted it because "there's no future medical." (AR 64-65.)

3

Plaintiff testified that he is currently going to "Healthpoint" for therapy following a car accident that occurred in November 2013. (*See* AR 46-47; *see also* AR 57-58, 60-61.) Plaintiff also complained that he has "hammer toes," and "a broke toe that will never healed [sic]." (AR 50.)

A vocational expert ("VE"), Dr. Gail L. Maron, appeared and testified at the hearing. (*See* AR 20, 50-53.) The VE confirmed that plaintiff had no past work. (AR 50.) The VE opined that, based on a hypothetical RFC that included six hours of sitting and two hours of standing a day, the plaintiff could perform sedentary jobs such as "microfilm document preparer," DOT[2] 249.587-018, "addresser," DOT 209.587-018, or "food and beverage order clerk," DOT 209.567-014. (AR 50-51.) The VE opined, however, that if plaintiff was required to stand and walk around two times an hour for five minutes each time, plaintiff could not perform sedentary work and there would be no occupations in the national economy that plaintiff could perform. (AR 52.)

After the VE testified, plaintiff's wife, Lameka Washington, also testified at the hearing. (*See* AR 54 *et seq.*) Ms. Washington testified that plaintiff spends his time in bed, and doesn't do "much of anything" because "he has back spasms majority of all day." (AR 55.) Ms. Washington said that she does "everything else; the housework, the shopping, everything for him." (AR 55.) Plaintiff's wife said that he can "arm reach," but he can't reach "[a]nything over his head or anything else." (AR 55-56.) She testified that, although her husband takes medications, and has experimented with different medications and dosages, "[t]here's nothing works." (AR 56.) Ms. Washington testified that plaintiff goes for medical treatment "three to four times a week," and she said "[h]e's at the doctor the majority of all week." (AR 57.)

---

[2] *Dictionary of Occupational Titles*, Sixth Edition Revised (U.S. Department of Labor, 1991).

4

On July 24, 2014, the ALJ issued an unfavorable opinion, denying plaintiff's request for SSI benefits. (AR 17-33.) On September 16, 2014, plaintiff requested review by the Appeals Council. (*See* AR 11-16.) The Appeals Council denied review on the same date, making the ALJ's decision the final decision of the Commissioner pursuant to 42 U.S.C. § 405(h). (AR 5-10.) This timely appeal followed.

**SUMMARY OF ADMINISTRATIVE DECISION**

Applying the five-step sequential evaluation process, at step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since May 9, 2012, the application date. (AR 22.)

At step two, the ALJ found that plaintiff had four severe impairments: lumbosacral degenerative disc disease, status-post left knee surgery, obesity, and bilateral hallux valgus (commonly referred to as "bunions"). (*Id.*) The ALJ further noted that plaintiff's physical impairments "preclude him from heavy lifting/carrying and prolonged standing/walking." (*Id.*)

At step three, the ALJ determined that plaintiff does not have an impairment or combination of impairments that meet or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (*Id.*) Before proceeding to step four, the ALJ concluded that plaintiff has the residual functional capacity ("RFC") to perform light work,

> except he is limited to standing/walking for two hours out of an eight-hour work day but not continuously, sit for six hours out of an eight-hour workday and perform only occasional postural activities such as bending, stooping, balancing, crouching, crawling and kneeling.

5

(*Id.*)

Consistent with agency guidelines, the ALJ classified plaintiff as a "younger individual" as of the date that the application was filed on May 9, 2012 (when plaintiff was 38 years old) and determined that plaintiff had no past relevant work. (*Id.*)

After considering plaintiff's age, education, work experience, RFC, and the VE's testimony, the ALJ concluded that plaintiff is capable of performing "the requirements of representative occupations such as microfilm document preparer (DOT #249.587-018), addresser (DOT #209.587-018) and food and beverage order clerk (DOT #209.567-014)," which jobs exists in significant numbers in the national economy. (AR 30.)

Accordingly, at step five, the ALJ concluded that plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy" and found plaintiff has not been under a disability as defined in the Social Security Act between May 9, 2012, the application date, and the decision date. (*Id.*)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted); *Desrosiers v. Sec'y of Health and Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal citations omitted).

**DISCUSSION**

I. **Disputed Issues**

Plaintiff challenges the adverse decision based on the following two issues:

(1) Whether the ALJ adequately considered plaintiff's pain and symptom testimony; and

(2) Whether the ALJ's complete failure to mention or discuss the testimony from plaintiff's wife, lay witness Lemeka Washington, constitutes reversible error.

Plaintiff contends that the ALJ's errors warrant reversal of the Commissioner's adverse decision and an immediate award of benefits. (Joint Stip. at 20.) Defendant argues that no grounds exist to overturn the agency's decision but if any error was made, the proper remedy is to remand the case for further administrative proceedings. (Joint Stip. at 21.)

## II. Medical Evidence

The ALJ noted that Plaintiff had a Workers' Compensation claim which was still pending at the time of the hearing, and had been pending for a number of years. (*See* AR 25; *see also* AR 187-88.) In May 2012, a treating physician at Kaiser, Dr. Guirguis Hanna, found decreased range of motion with tenderness and pain in plaintiff's spine. (AR 24; 267.) Dr. Hanna released plaintiff to "modified duty with no lifting/pushing/pulling over 10 pounds, [and no] bending at the waist or twisting." (AR 24; 268.) Plaintiff was prescribed a cane, naproxen, Robaxin, and Pamelor. (AR 24, 267.) However, the treating Dr. Hanna also noted "a positive Waddell's sign indicating symptom magnification." (AR 24.)[3]

A consultative orthopedic examination was performed by D.O. Vicente Bernabe in July 2012, and in the consulting orthopedist's opinion plaintiff could perform the full range of work at the medium level. (AR 24-25; 254-58.) Dr. Bernabe had no medical records

---

[3] "Waddell signs" are a group of physical signs, which may indicate non-organic or psychological components to chronic low back pain. *See Physiopedia,* at http://www.physio-pedia.com/Waddells_Sign. (last visited March 8, 2017). Historically, Waddell signs have also been used to detect malingering in patients with back pain. *See id.* Although Waddell signs can detect non-organic components to pain, they do not exclude organic causes. *See id. See also Werthy v. Astrue,* 882 F. Supp. 2d 1202, 1211 (D. Or. 2011) (Waddell signs were developed to identify psychogenic, or nonorganic, manifestations of pain in patients that may have heightened emotional effects on their condition (citation omitted)).

8

available for review. (AR 254.) Dr. Bernabe opined that plaintiff had no restrictions in postural movements. (AR 258.) In September 2012, plaintiff was referred to Pain Block at Kaiser Permanente for lower back and right leg pain, where it was found that he had symptoms and findings consistent with right lumbar radiculopathy and lumbar degenerative disc disease at L4-L5 and L5-S1. (AR 25; 372.) Plaintiff was treated with a right L5 transforaminal epidural steroid injection. (*See* AR 25; 373.) Around December 2012, another treating physician, Dr. Nhat Hong Tran, found that plaintiff had only mild pain relief from his chronic back pain with anti-inflammatory medication and opioids. (AR 25; 314.) Dr. Tran opined that plaintiff was limited to semi-sedentary work (AR 317), and the ALJ gave Dr. Tran's opinion considerable weight. (AR 25-26.)

Dr. George Watkin examined plaintiff in December 2012 for the Workers' Compensation claim, and noted plaintiff's prior diagnoses of "obesity" and "morbid obesity." (AR 26-27, citing Exhibits 1F at 5, 7, and 11.) The ALJ's opinion states "[b]ased on the opinions [sic] of Dr. Watkin, it is expected that claimant's weight exacerbated his symptoms." (AR 27, citing SSR 02-01p.) In April 2013, a consultative orthopedic examiner, Dr. H. Harlan Bleecker, also noted a "positive Waddell's sign." (AR 27.)

The ALJ found plaintiff's statements about his symptoms "not entirely credible," noting, *inter alia,* that plaintiff reported being able to walk one mile a day[4], and that he attended school and was on a work crew while in prison. (*See* AR 28-29.) The ALJ noted that, Dr. Hanna, a treating physician, and the consultative orthopedic examiner, Dr. Bleecker, had both found "positive Waddell findings," indicating "some symptom exaggeration." (AR 29.)

//
//

---

[4] Plaintiff points out that this reference is found in an August 2011 report that pre-dates the alleged onset date relevant here. (*See* Joint Stip. at 8-9; AR 241.)

9

### III. The ALJ's Failure to Discuss Plaintiff's Wife's Testimony Is Reversible Error

Because this Court finds that plaintiff's second issue, concerning the ALJ's disregard of plaintiff's wife's testimony, is dispositive of the review here, the Court considers that issue first.

As noted above, Plaintiff's wife testified that plaintiff can't reach "[a]nything over his head or anything else." (AR 55-56.) She testified that, although her husband takes medications, and has experimented with different medications and dosages, "[t]here's nothing works." (AR 56.) Ms. Washington testified that plaintiff goes for medical treatment "three to four times a week," and she said "[h]e's at the doctor the majority of all week." (AR 57.) The ALJ's opinion, however, does not mention or discuss the testimony given by plaintiff's wife, Lameka Washington. (*See* AR 20-30.)

Plaintiff maintains that his wife's lay testimony cannot be disregarded without comment. (Joint Stip. at 17, *citing Nguyen v. Chater,* 100 F.3d 1462, 1467 (9th Cir. 1996).) Plaintiff argues that "[t]he silent disregard of lay testimony does not constitute harmless error unless the court can confidently conclude that no reasonable ALJ could have reached a different disability determination." (Joint Stip. at 18, *citing Stout v. Comm'r,* 454 F.3d 1050, 1056 (9th Cir. 2006).)

Defendant argues that plaintiff's wife's testimony simply "parrots" the assertions made by plaintiff himself, and since the ALJ legitimately analyzed and questioned plaintiff's credibility, there is no need for the ALJ to also consider the effectively-cumulative testimony from plaintiff's wife. (*See* Joint Stip. at 18-19, *citing, inter alia, Valentine v. Astrue,* 574 F.3d 685, 694 (9th Cir. 2009).)

A. <u>Applicable Law</u>

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Bruce v. Astrue,* 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting *Stout,* 454 F.3d at 1053) (internal quotation marks omitted). Indeed, the Ninth Circuit has emphasized that an ALJ is "*required* to consider and comment upon competent lay testimony, as it concerned how [Plaintiff's] impairments impact his ability to work." *Id*. (emphasis added). "[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to [the claimant's] condition." *Dodrill v. Shalala,* 12 F.3d 915, 918-19 (9th Cir. 1993); *see also* 20 C.F.R. § 404.1513(d) ("[W]e may also use evidence from other sources to show the severity of your impairment(s). . . . Other sources include, but are not limited to . . . spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, and clergy."). Such testimony is "competent evidence" and "cannot be disregarded without comment." *Bruce,* 557 F.3d at 1115 (quoting *Nguyen,* 100 F.3d at 1467 (internal quotation marks omitted)). *See also Taylor v. Comm'r of Social Sec. Admin.,* 659 F.3d 1228, 1234 (9th Cir. 2011) (ALJ must "provide specific, germane reasons for discounting lay witness testimony" from a claimant's wife).

However, where a lay witness wife's statements are "similar" to her claimant-husband's statements, if the ALJ gives germane reasons for rejecting the claimant-husband's statements, those reasons are also germane to the lay witness wife's testimony. *See Valentine,* 574 F.3d at 693-94 (where claimant's wife's testimony was similar to his own statements, ALJ's failure to analyze wife's testimony may be harmless); *see also Molina,* 674 F.3d at 1122 (if ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness). Nevertheless, when an ALJ has failed to include limitations described by a lay witness, such as a claimant's wife, in a dispositive hypothetical posed to a VE, and the ALJ gave

inconsistent and inadequate reasons for rejecting the wife's lay witness testimony, reversal and remand may be warranted. *See Bruce,* 557 F.3d at 1116 (citations omitted).

In light of these authorities, the question in this case is whether the testimony from the lay witness, plaintiff's wife Lameka Washington, was sufficiently similar to plaintiff's own statements to excuse the ALJ's complete failure to discuss Ms. Washington's testimony. For the reasons discussed below, this Court finds that it was not.

B. Analysis

Notably, the ALJ posed the dispositive hypothetical to the VE *before* the ALJ examined plaintiff's wife. (*Cf.* AR 50, 54.) As such, that hypothetical did not include any of the limitations that plaintiff's wife asserted that plaintiff suffered from. In particular, there was no mention of Ms. Washington's testimony that described plaintiff's limitations in reaching, where she said that plaintiff can only "arm reach" and can't reach "[a]nything over his head or anything else." (AR 55-56.) Indeed, the reaching limitations described by plaintiff's wife distinguish her testimony from plaintiff's statements, and describes a limitation not specifically discussed anywhere else at the hearing before the ALJ. (*Cf.* AR 40-50, 57-60, 61-66 (plaintiff's testimony) *with* AR 54-57, 60-63 (plaintiff's wife's testimony).)

The ALJ does not acknowledge, discuss or consider the impact of any reaching limitations in her opinion. (*See* AR 20-30.) The hypothetical posed to the VE described an individual who could lift 20 pounds occasionally, and 10 pounds frequently, but the hypothetical did not include any limitations on reaching. (AR 51.) The VE's response, in which she posited three sedentary jobs that such an individual could perform, also did not include any discussion of reaching requirements. (*See* AR 50-52.) The Court has reviewed the three DOT job descriptions that the VE identified as suitable for plaintiff, and the Court's

review reveals that the microfilm document preparer job requires "frequent" reaching, from 1/3rd to 2/3rds of the time. *See* DOT no. 249.587-018. The "addresser" job, which is entitled "Direct-Mail Clerk," also requires frequent reaching, from 1/3rd to 2/3rds of the time. *See* DOT no. 209.587-018. Lastly, the food and beverage order clerk also requires frequent reaching, from 1/3rd to 2/3rds of the time. *See* DOT no. 209.567-014.

It is clear from the record that plaintiff's wife described reaching limitations that distinguished her testimony from plaintiff's statements. Consequently, the ALJ should have explicitly discussed Ms. Washington's testimony. *See Bruce,* 557 F.3d at 115 (competent evidence from lay witness cannot be disregarded without comment); *Valentine,* 574 F.3d at 693-94 (ALJ overlooking wife's lay testimony is only harmless if wife's testimony is similar to other testimony in record). Furthermore, if those reaching limitations had been considered by the ALJ and eventually credited, they should have been included in the hypothetical to the VE, since the jobs posited by the VE all require frequent reaching. *See Osenbrock v. Apfel,* 240 F.3d 1157, 1164-65 (9th Cir. 2001) (hypothetical question posed to VE must include all impairments supported by substantial evidence); *Andrews,* 53 F.3d at 1043 (reliance on hypothetical that fails to include all accepted limitations is insufficient to carry agency's burden at step five of proving ability to engage in alternative work). At the very least, the ALJ was obligated to provide some explanation and reasoning for completely ignoring this testimony. His failure to do was legal error and warrants remand.

**IV. <u>Remand For Further Proceedings Is Appropriate.</u>**

For the reasons stated above, the Court finds that the ALJ erred by not considering the lay testimony from plaintiff's wife, Lameka Washington. Because this legal error requires remand for further proceedings, the Court declines to address plaintiff's argument that the ALJ also failed to properly evaluate his credibility. However, because plaintiff contends that

13

the ALJ's error warrants the immediate award of benefits, the Court considers whether the "credit as true" rule applies.

"The touchstone for an award of benefits is the existence of a disability, not the agency's legal error." *Brown-Hunter*, 806 F.3d at 495. Accordingly, a reviewing court is not required to credit as true a claimant's allegations merely because the ALJ made a legal error in discrediting them. *See id.* (citing *Treichler v. Comm'r of Social Sec. Admin.,* 775 F.3d 1090, 1106 (9th Cir. 2014)). Instead, a remand for an immediate award of benefits is appropriate only in "rare circumstances," and, before ordering that extreme remedy, the Court must satisfy itself that: (1) the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence; (2) the record is fully developed and free from conflicts and ambiguities with all essential factual issues resolved so that further administrative proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015).

Nonetheless, even when those three requirements are met, the Court retains "flexibility" in determining the appropriate remedy. *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (quoting *Garrison v. Colvin,* 759 F.3d 995, 1021 (9th Cir. 2014)). "In particular, [the Court] may remand on an open record for further proceedings 'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.'" *Id.* (quoting *Garrison*, 759 F.3d at 1021).

This case does not present the "rare circumstances" in which, despite the ALJ's legal error, the claimant affirmatively established the existence of a disability and additional administrative proceedings would serve no useful purpose. It is uncertain how the inclusion of an analysis of the testimony from plaintiff's wife, lay witness Lameka Washington, would affect the disability determination. It is also uncertain how, if the limitations described by

Ms. Washington were credited and included in a hypothetical to a VE, the disability determination would be impacted.

Accordingly, an award for benefits is not appropriate at this time, and the matter must be remanded for further proceedings consistent with this opinion and order. This Court also notes that, although it is not necessary for the Court to consider plaintiff's first issue − that the ALJ improperly discounted plaintiff's subjective complaints and credibility – the ALJ may want to consider developing the record with a psychiatric evaluation that might shed more light on the significance of the two positive "Waddell sign" findings.

## CONCLUSION

For the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATE: March 9, 2017

                                         /s/ Karen L. Stevenson
                                         KAREN L. STEVENSON
                                         UNITED STATES MAGISTRATE JUDGE